**PEARSON LAW GROUP**
By:  Briana Lynn Pearson, Esquire
Identification No. 327007
1500 Chestnut St. Suite 2 #2898
Philadelphia, PA 19102
Phone: 484-469-0322
Fax: 856-229-9991
Email: bpearson@pearsonlawgroup.org

**Attorneys for Plaintiff,
James R. Lannigan**

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES R. LANNIGAN<br>Plaintiff, | :<br>:<br>: No. 2:26-cv-5441<br>: |
| v. | :<br>: |
| LUX ICE, LLC<br>Defendant. | :<br>: JURY DEMANDED |

## COMPLAINT

Plaintiff, James R. Lannigan ("Plaintiff"), by and through undersigned counsel, files this Complaint against Defendant Lux Ice, LLC ("Lux Ice" or "Defendant"), and avers as follows:

## NATURE OF THE ACTION

1. This is an action for breach of contract arising from Defendant's failure to honor an independent compensation agreement whereby Defendant agreed to compensate Plaintiff in an amount equal to ten percent (10%) of the sales generated by Plaintiff and Plaintiff's sales team.

2. The agreement at issue was formed and confirmed by written email communications exchanged in August 2020. The email communication is attached hereto as Exhibit "A."

3. The Independent Compensation Agreement exists separate and apart from any Operating Agreement, Shareholder Agreement, Membership Agreement, Unit Assignment, or any other agreement governing Plaintiff's ownership or membership interest in Defendant, and Plaintiff's right to compensation thereunder neither arises from nor depends upon any such agreement.

4. This action does not arise under, seek enforcement of, require interpretation of, any Operating Agreement, Shareholder Agreement, Membership Agreement, Unit Assignment, or any other agreement governing Plaintiff's ownership or membership interest in Defendant.

5. Plaintiff seeks damages solely for Defendant's breach of an independent compensation agreement pursuant to which Defendant promised Plaintiff payment equal to ten percent (10%) of all sales generated by Plaintiff and Plaintiff's sales team.

6. The compensation agreement constitutes a separate and enforceable contract independent of any executed operating agreement, and resolution of this action does not require interpretation or enforcement of the Operating Agreement or any arbitration provision contained therein.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because this action is between citizens of different States and the amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

8. Plaintiff James R. Lannigan is a citizen of the Commonwealth of Pennsylvania.

9. Defendant Lux Ice, LLC is a Texas limited liability company with its principal place of business located at 1200 Lakeside Parkway, Suite 475, Flower Mound, Texas 75028-4041. Upon information and belief, none of the members of Defendant Lux Ice, LLC are citizens of the Commonwealth of Pennsylvania.

10. This Court has personal jurisdiction over Defendant because Defendant purposefully directed business activities toward the Commonwealth of Pennsylvania, entered into the compensation agreement with a Pennsylvania resident, communicated with Plaintiff in Pennsylvania, accepted the benefits of Plaintiff's performance in Pennsylvania, and caused injury to Plaintiff in Pennsylvania.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within the Eastern District of Pennsylvania. Plaintiff performed substantial services under the compensation agreement in this District, Defendant directed communications into this District, payments due under the agreement were to be received by Plaintiff in this District, and Plaintiff suffered the economic injury resulting from Defendant's breach in this District.

## PARTIES

14. Plaintiff James R. Lannigan is an adult individual residing in Montgomery County, Pennsylvania.

15. Defendant Lux Ice, LLC ("Lux Ice")  is a Texas limited liability company with its principal place of business located at 1200 Lakeside Parkway, Suite 475, Flower Mound, Texas 75028-4041, and may be served through its registered agent in accordance with applicable law.

## FACTUAL ALLEGATIONS

16. Plaintiff joined Defendant during its formative stage and devoted substantial time, effort, industry knowledge, customer relationships, and professional expertise toward developing Defendant's business and national sales operations.

17. At all times relevant to the formation of the Independent Compensation Agreement, Shawn Kilcoyne was Defendant's Chief Executive Officer or other senior executive officer and was authorized to negotiate and enter into agreements on Defendant's behalf concerning executive compensation, commission arrangements, sales compensation, equity participation, and other material business matters.

18. Kilcoyne possessed actual authority, apparent authority, and inherent authority to negotiate and enter into agreements on behalf of Defendant concerning executive compensation, commission arrangements, sales compensation, equity participation, and other material business terms.

19. Defendant held Kilcoyne out to Plaintiff and others as possessing such authority, and Plaintiff reasonably relied upon Kilcoyne's authority to bind Defendant when entering into the compensation agreement described herein.

20. In August of 2020, Plaintiff and Kilcoyne negotiated Plaintiff's compensation package as part of Plaintiff's commitment to build Defendant's sales organization and expand Defendant's business.

21. On August 18, 2020, Kilcoyne transmitted an email to Plaintiff confirming the parties' agreement and expressly stating, "Yes, we agreed to 10% of your sales and your sales team sales..." Ex. "A."

22. In the same email, Kilcoyne separately confirmed Plaintiff's ownership interest by stating, "You also own 10% of the company." *Id.*

23. The plain language of Kilcoyne's email confirms that Defendant agreed to two distinct obligations: first, to compensate Plaintiff with ten percent (10%) of the sales generated by Plaintiff and Plaintiff's sales organization; and second, to provide Plaintiff with a separate ten percent (10%) ownership interest in the Company.

24. Plaintiff's email immediately preceding Kilcoyne's response likewise distinguished between the parties' agreement concerning Plaintiff's sales compensation and Plaintiff's ownership interest by separately referring to "10% of sales" and "10% in equity."

25. The parties therefore formed an enforceable agreement concerning Plaintiff's sales compensation that existed independently of any Operating Agreement, Shareholder Agreement, Membership Agreement, Unit Assignment, or other agreement governing Plaintiff's ownership or membership rights in Defendant.

26. The August 18, 2020 email memorialized the parties' existing agreement and confirmed the material terms of the parties' compensation contract.

27. The Independent Compensation Agreement was complete and enforceable upon the parties' mutual assent. Defendant's obligation to compensate Plaintiff was not conditioned upon the execution of any Operating Agreement, Shareholder Agreement, Membership Agreement, Unit Assignment, or other governance document.

28. The compensation agreement neither references nor incorporates any Operating Agreement, shareholder agreement, or arbitration provision.

29. The Independent Compensation Agreement contains no arbitration provision, merger clause, or incorporation of any Operating Agreement or shareholder agreement. It concerns only Plaintiff's compensation for sales generated by Plaintiff and his sales organization, whereas the Operating Agreement governs the ownership, management, governance, capitalization, and internal affairs of Defendant.

30. Plaintiff's right to recover under the Independent Compensation Agreement neither arises from nor depends upon any provision of any Operating Agreement.

31. Accordingly, enforcement of the Independent Compensation Agreement does not require interpretation, construction, or enforcement of the Operating Agreement or any arbitration provision contained therein. Plaintiff therefore seeks adjudication of his claims in this Court.

32. Plaintiff accepted Defendant's offer and fully performed his obligations by devoting substantial time and effort to developing Defendant's sales organization,

cultivating customer relationships, generating substantial sales, recruiting and supervising sales personnel, and advancing Defendant's business interests.

33. In consideration for Defendant's promise to compensate Plaintiff with ten percent (10%) of the sales generated by Plaintiff and Plaintiff's sales team, Plaintiff agreed to devote his efforts, industry relationships, expertise, and business opportunities toward building Defendant's sales organization and expanding Defendant's business, which Plaintiff thereafter performed.

34. Defendant knowingly accepted and retained the benefits of Plaintiff's performance.

35. Under the compensation agreement, Defendant became obligated to pay Plaintiff an amount equal to ten percent (10%) of the sales generated by Plaintiff and Plaintiff's sales organization.

36. Defendant failed and refused to pay Plaintiff the compensation promised under the agreement.

37. Based upon information presently available to Plaintiff, the unpaid compensation owed by Defendant exceeds Five Hundred Thousand Dollars ($500,000.00).

38. Following Defendant's failure to make payment, Plaintiff repeatedly sought payment of the compensation due under the parties' agreement.

39. Defendant, acting through its authorized officers and agents, repeatedly acknowledged Plaintiff's entitlement to payment and repeatedly assured Plaintiff that he would be paid when the Company's financial condition improved, additional financing closed, or sufficient cash flow became available.

40. Defendant's repeated assurances were intended to induce Plaintiff to refrain from instituting legal proceedings and to continue supporting Defendant's business operations.

41. Plaintiff reasonably relied upon Defendant's repeated assurances by delaying legal action, continuing to devote efforts for Defendant's benefit, and foregoing other legal and business opportunities that otherwise would have been pursued.

42. Plaintiff's reliance upon Defendant's repeated assurances was reasonable because those assurances were made by Defendant's officers and authorized agents, who repeatedly represented that payment would be forthcoming.

43. Defendant should therefore be equitably estopped from asserting any statute of limitations defense based upon delay that Defendant intentionally induced through its repeated promises and assurances.

44. Plaintiff anticipates Defendant may contend that this dispute is governed by the arbitration provision contained in the Company's Operating Agreement. Plaintiff expressly alleges that no arbitration agreement governs the Independent Compensation Agreement forming the basis of this action.

45. Resolution of *this action* requires only a determination of whether Defendant entered into the independent compensation agreement confirmed by the August 18, 2020 email, whether Plaintiff fully performed his obligations under that agreement, the amount of sales generated by Plaintiff and his sales organization, and the amount of compensation owed by Defendant.

**CAUSES OF ACTION**

**COUNT I**
**BREACH OF CONTRACT**

46. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

47. Plaintiff and Defendant entered into a valid and enforceable Independent Compensation Agreement, the material terms of which were confirmed by Defendant's August 18, 2020 email to Plaintiff.

48. Pursuant to the Independent Compensation Agreement, Defendant agreed to compensate Plaintiff in an amount equal to ten percent (10%) of the sales generated by Plaintiff and Plaintiff's sales team.

49. The Independent Compensation Agreement was supported by valid consideration. In exchange for Defendant's promise to pay the agreed compensation, Plaintiff agreed to devote his efforts, expertise, industry relationships, business opportunities, and professional services to developing Defendant's sales organization and expanding Defendant's business.

50. Plaintiff fully performed, or substantially performed, all obligations required of him under the Independent Compensation Agreement.

51. Defendant accepted and retained the substantial benefits of Plaintiff's performance.

52. Defendant materially breached the Independent Compensation Agreement by failing and refusing to pay Plaintiff the agreed compensation equal to ten percent (10%) of the sales generated by Plaintiff and Plaintiff's sales team.

53. Despite repeated demands for payment, Defendant has failed and refused to cure its breach.

54. Defendant's breach was without legal justification or excuse.

55. As a direct and proximate result of Defendant's breach, Plaintiff has sustained damages in an amount believed to exceed Five Hundred Thousand Dollars ($500,000.00), together with pre-judgment interest, post-judgment interest, costs, and such other damages as may be proven at trial.

56. Plaintiff has performed all conditions precedent to recovery under the Independent Compensation Agreement, or such conditions have been waived, excused, or prevented by Defendant.

## COUNT II
## PROMISSORY ESTOPPEL
## (PLEADED IN THE ALTERNATIVE)

57. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

58. This Count is pleaded in the alternative pursuant to Rule 8(d) of the Federal Rules of Civil Procedure and only in the event the Court determines that no enforceable contract exists.

59. Defendant, acting through its authorized officers and agents, made a clear and definite promise that Plaintiff would receive compensation equal to ten percent (10%) of the sales generated by Plaintiff and Plaintiff's sales team.

60. Defendant reasonably expected and intended that Plaintiff would rely upon that promise by devoting substantial time, effort, expertise, business relationships,

and professional services to building Defendant's sales organization and expanding Defendant's business.

61. Plaintiff reasonably relied upon Defendant's promise.

62. In reliance upon Defendant's promise, Plaintiff devoted substantial time, labor, expertise, customer relationships, and business opportunities to Defendant's benefit, and forewent other professional and business opportunities.

63. Defendant accepted and retained the benefits of Plaintiff's reliance.

64. Defendant's breach has been continuous, and despite repeated demands, Defendant has failed and refused to pay Plaintiff the compensation due under the Independent Compensation Agreement.

65. Injustice can be avoided only by enforcement of Defendant's promise.

66. As a direct and proximate result of Defendant's failure to honor its promise, Plaintiff has sustained damages in an amount believed to exceed Five Hundred Thousand Dollars ($500,000.00), together with pre-judgment interest, post-judgment interest, costs, and such other damages as may be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff James R. Lannigan respectfully requests that this Court enter judgment in his favor and against Defendant Lux Ice, LLC, and award the following relief:

A. Compensatory damages in an amount to be determined at trial, but believed to exceed Five Hundred Thousand Dollars ($500,000.00);

B. Pre-judgment interest as permitted by applicable law;

C. Post-judgment interest as permitted by law;

D. Costs of suit;

E. Such attorneys' fees as may be recoverable by contract, statute, or other applicable law;

F. Such other and further legal or equitable relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

PEARSON LAW GROUP

_____
Briana Lynn Pearson, Esquire
Attorney for Plaintiff

**July 31, 2026**